# United States District Court
# Central District of California

| | |
|---|---|
| MICHELLE AMMONS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DIVERSIFIED ADJUSTMENT SERVICE, INC.,<br><br>　　　　　Defendant. | Case № 2:18-cv-06489-ODW (MAAx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [38]** |

## I.　INTRODUCTION

Plaintiff Michelle Ammons ("Ammons") sued Defendant Diversified Adjustment Service, Inc. ("DAS") for claims arising from DAS's debt collection activities. (*See generally* Compl., ECF No. 1.) Now before the Court is DAS's Motion for Summary Judgment or Partial Summary Judgment ("Motion"). (Mot., ECF No. 38.) For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.[1]

## II.　BACKGROUND

This case concerns Ammons's delinquent Sprint account and DAS's attempts to collect the debt. On November 9, 2017, Sprint placed Ammons's delinquent account

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

with DAS for collection. (Def.'s Separate Statement of Uncontroverted Facts ("DSUF") 21, ECF No. 38-2.) DAS first called Ammons's cell phone ending in 3436 ("3436 Cell Phone") on February 20, 2018. (*See* Compl. ¶ 11; Decl. of Mark E. Ellis in Supp. of Mot. ("Ellis Decl.") Ex. 3 ("3436 Call Log") 1, ECF No. 38-3.) DAS placed no calls to Ammons after May 3, 2018. (*See* Compl. ¶ 17; 3436 Call Log 2; Opp'n to Mot. 1 ("Opp'n"), ECF No. 40.) In the seventy-three days between February 20 and May 3, 2018, DAS placed seventy-seven calls to Ammons's 3436 Cell Phone, sometimes calling three to five times per day. (DSUF 21; *see* 3436 Call Log 1–2.) Ammons asserts that DAS's calls exacerbated her existing stress. (Compl. ¶ 27; DSUF 32.)

Every call DAS placed to the 3436 Cell Phone used the LiveVox HCI (Human Call Initiator) dialing platform. (DSUF 5, 21.) The parties dispute whether LiveVox HCI is an "automatic telephone dialing system" ("ATDS") as defined by the Telephone Consumer Protection Act ("TCPA"). (*See* DSUF 6–19; Pl.'s Statement of Contested Facts ("PSCF") 6–19, ECF No. 40-1.)

Of the seventy-seven calls placed to the 3436 Cell Phone, Ammons answered five. (DSUF 25.) On two occasions, Ammons told DAS to stop calling and once that she was experiencing financial difficulties. (PSCF 26, 28, 31; Decl. of K.C. Karnowski in Supp. of Mot. ("Karnowski Decl.") ¶¶ 13, 15, 18, ECF No. 38-4; Decl. of Brian Brazier in Supp. of Opp'n ("Brazier Decl.") Exs. F, H, J, ECF Nos. 40-8, 40-10, 40-12.) No DAS agent ever threatened Ammons or used abusive language. (DSUF 25; Ellis Decl. Ex. 6 ("Pl.'s Resp. to Def.'s RFAs"), Reqs. 21, 30, 31.) Four of the five calls lasted less than a minute and the cumulative time for all five answered calls totals 217 seconds (or 3 minutes 37 seconds). (*See* DSUF 26–31.) Ammons ended each call. (DSUF 26–31; Karnowski Decl. ¶¶ 13–18; Brazier Decl. Exs. F–J.)

Sprint recalled Ammons's account from DAS on May 9, 2018. (DSUF 21.) On June 7, 2018, Ammons's counsel sent a demand letter to DAS with a request that DAS stop calling Ammons. (DSUF 22–23.)

On July 27, 2018, Ammons filed this lawsuit against DAS, asserting four causes of action for violations of (1) TCPA, 47 U.S.C. § 227 *et seq.*; (2) Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692d, 1692d(5), and 1692f; (3) Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code sections 1788.11(d) and 1788.17; and (4) Intrusion Upon Seclusion. (*See* Compl. ¶¶ 33–54.) On May 30, 2019, the Court denied Ammons's motion to amend the Complaint. (Order Denying Mot. to Amend, ECF No. 39.) On May 24, 2019, while the motion to amend was pending, DAS moved for summary judgment. (*See* Mot.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d 1134.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,

818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus.*, 475 U.S. at 586–87). "[U]ncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

### IV. DISCUSSION

DAS moves for summary judgment on all of Ammons's claims as well as her requests for actual and punitive damages. (*See* Mot. 1–6.) Before considering the merits of DAS's Motion, the Court addresses the relevant evidentiary objections.[2]

---

[2] To the extent the Court relies on evidence objected to in resolving the Motion without discussion, the relevant objections are **OVERRULED**. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118–19 (E.D. Cal. 2006).

A.   **EVIDENTIARY OBJECTIONS**

   1.   *Expert Report*

DAS objects to the declaration of Ammons's expert, Randall Snyder, as untimely and lacking foundation. (*See* Def.'s Mem. of Objs. 1–10, ECF No. 42-2.)

"Federal Rule of Civil Procedure [("Rule")] 26(a)(2)(B) requires the parties to disclose the identity of each expert witness 'accompanied by a written report prepared and signed by the witness.'" *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1) provides an automatic sanction "forbidding the use at trial [or on a motion] of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Id.* Where exclusion would amount to outright dismissal, the court must consider whether the party's conduct amounts to "willfulness, fault, or bad faith." *Id.* Unless the party's failure to disclose is "substantially justified or harmless," the information is excluded. *Id.*

The Scheduling and Case Management Order ("Scheduling Order") requires disclosure of expert reports eight weeks before the expert discovery cutoff. (*See* Scheduling Order 3, ECF No. 16.) Here, the cutoff was June 10, 2019, making the deadline to disclose experts and expert reports April 15, 2019. (Scheduling Order 24.) Yet Ammons disclosed Randall Snyder and his expert report on June 10, 2019, the expert discovery cutoff date. (*See* Decl. and Prelim. Expert Report of Randall Snyder in Opp'n to Mot. ("Snyder Report"), ECF No. 40-14; Suppl. Decl. Mark E. Ellis ("Ellis Suppl. Decl.") Ex. 15 ("Pl.'s Expert Disclosure Statement"), ECF No. 42-3.) As such, the Snyder Report is untimely.

The Snyder Report provides Snyder's opinions regarding whether the LiveVox HCI system is an ATDS under the TCPA. (*See* Synder Report ¶ 2.) The parties raised this issue in their October 2018 Joint Report and March 2019 stipulations extending the fact-discovery cutoff. (*See* Joint Report 3, ECF No. 15; Stipulation, ECF No. 28; Second Stipulation, ECF No. 30.) Thus, Ammons was aware that she may need a witness like Snyder as early as October 2018, yet did not disclose Snyder or his

Report until June 10, 2019, in opposition to DAS's Motion. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 n.5 (9th Cir. 2006) (affirming exclusion of untimely expert report where party "reasonably could have anticipated the necessity of the witness at the time of the deadline[]"). Nor is Ammons's late expert disclosure substantially justified or harmless. Ammons offers no justification for her untimely disclosure. (*See generally* Opp'n.) Further, by delaying to disclose Snyder and the Snyder Report until June 10, 2019, the last day of expert discovery and in opposition to DAS's Motion, Ammons denied DAS the opportunity to cross-examine Snyder for DAS's Motion and Reply, or to retain a rebuttal witness.

Accordingly, DAS's objection to the Snyder Report is **SUSTAINED** and the Snyder Report is **EXCLUDED**. *See* Fed. R. Civ. P. 37(c)(1).[3]

   2.   *Allegations Raised for the First Time in Opposition to DAS's Motion*

DAS also objects to Ammons's inclusion of calls not pleaded in the Complaint. (*See* Def.'s Mem. of Objs. 10–11.)

"[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). "If a plaintiff fails to assert any factual allegations as to a particular theory of liability in a complaint, the 'provision of affidavits and declarations supporting [that theory] at the summary judgment stage is ineffectual.'" *DK Holdings v. Miva, Inc.*, No. 16-CV-0580 W (AGS), 2019 WL 1470881, at *3 (S.D. Cal. Apr. 3, 2019) (quoting *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)). This is because Rule 8(a)(2) "requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Pickern*, 457 F.3d at 968 (internal quotation marks omitted).

---

[3] While exclusion of the Snyder Report may make it more onerous for Ammons to prove her TCPA claim, it does not amount to an outright dismissal. *See infra* section IV.B.

Ammons alleges in the Complaint that DAS called her 3436 Cell Phone approximately seventy times between February 2018 and May 2018. (Compl. ¶ 17.) She did not allege that DAS attempted to contact her in any other way, despite being aware of other calls. (*See* Compl. ¶¶ 11–32; Ellis Suppl. Decl. Ex. 9 ("Ammons Dep."), ECF No. 42-3.) Ammons now argues in opposition to DAS's Motion that DAS placed a total of 614 calls to various numbers between November 2017 and May 2018, including her 3436 Cell Phone, work number, and family members. (*See* Opp'n 1–2; PSCF 21.) However, as Ammons chose not to include these factual allegations in her Complaint, DAS was not on notice that Ammons intended to pursue her claims based on calls other than to the 3436 Cell Phone. *See Pickern*, 457 F.3d at 968–69 (holding that the complaint did not satisfy Rule 8's notice pleading requirements because it "gave the [defendants] no notice of the specific factual allegations presented for the first time in [the plaintiff's] opposition to summary judgment"); *see also La Asociacion*, 624 F.3d at 1088–89 (finding that party may not effectively amend complaint by raising a new supporting theory in response to a motion for summary judgment).

Courts should construe issues raised in "opposition to summary judgment that are outside the scope of the complaint" as a request to amend the pleadings. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). Shortly before the deadline to file dispositive motions, Ammons moved to amend her complaint to add allegations that DAS called her work number and emailed her. (*See* Mot. to Amend 3–4, ECF No. 34.) The Court denied the motion because Ammons did not seek leave to amend until more than three months beyond the deadline; did not show good cause to modify the scheduling order or for her delay; and submitted affidavits which demonstrated either carelessness or bad faith. (*See* Order Den. Mot. to Amend 3–4, ECF No. 39.) Indeed, the Court denied leave to amend to add the very allegations Ammons now raises in opposition. Ammons may not circumvent the

Court's Order in this way. Accordingly, DAS's objection is **SUSTAINED** and Ammons may not rely on calls not pleaded to support her claims.

B.   **TCPA, 47 U.S.C. § 227** *et seq.*

DAS moves for summary judgment on Ammons's TCPA claim on the basis that LiveVox HCI is not an automatic telephone dialing system ("ATDS") such that its use does not violate the TCPA. (Mot. 12–16.)

Under the TCPA, it is unlawful "to make any call . . . using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). ATDS is defined by the statute as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). The definition of an ATDS has been in flux in recent years. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1045–49 (9th Cir. 2018). Recently, however, the United States Court of Appeals for the District of Columbia Circuit found the FCC's guidance contradictory and unreasonably expansive, and "vacated the FCC's interpretation of what sort of device qualifie[s] as an ATDS." *Id.* at 1049 (discussing *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018)). Accordingly, in *Marks*, the Ninth Circuit "beg[an] anew to consider the definition of ATDS." *Id.* at 1050. The Ninth Circuit concluded that an ATDS is "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Id.* at 1053.

The parties agree that all calls DAS placed to Ammons's 3436 Cell Phone used LiveVox HCI. (DSUF 5.) DAS contends that LiveVox HCI is not an ATDS under the TCPA because each call must be initiated by manual human intervention. (Mot. 13.) DAS submits evidence supporting that, while LiveVox has several cloud-based dialing platforms, the LiveVox HCI system was purposefully designed to require a human component to initiate each call through that platform, and to be

incapable of automated calling. (Decl. of Laurence Siegel in Supp. of Mot. ("Siegel Decl.") ¶ 2, ECF No. 38-5.) The human component, a "clicker agent," must physically click a dialog box to launch each individual call. (Siegel Decl. ¶¶ 8, 19.) The clicker agent verifies that a "closer agent" is available to receive the call before launching it; LiveVox HCI does not use any predictive algorithms in launching the calls. (Siegel Decl. ¶¶ 9–11.) DAS's evidence shows that LiveVox HCI has no capacity to store numbers to be called, to produce numbers to be called using a random or sequential number generator, or to dial numbers automatically. As such, LiveVox HCI does not qualify as an ATDS.

Ammons contends that LiveVox HCI is an ATDS because LiveVox can store a list of numbers to be called. (Opp'n 6.) She relies on the deposition of DAS's corporate representative, who agreed it would be fair to say a "campaign," "sort of like a list," "gets sent up to LiveVox." (Opp'n 6.) However, at the same time, Ammons notes, "LiveVox then dials those numbers on its own *when given the go-ahead to do so*." (Opp'n 6 (emphasis added)). Thus, Ammons acknowledges that, even if LiveVox stores numbers, LiveVox HCI still requires human intervention to launch calls to them. Ammons also contends that, because the LiveVox HCI system was "[t]ransparently designed to insert an unnecessary person into the process" for the purpose of avoiding TCPA liability, the clicker agent's role should not disqualify LiveVox HCI as an ATDS. (Opp'n 8.) Yet to be an ATDS, a system must be capable of automatic dialing, which LiveVox HCI is not. (*See* Siegel Decl. ¶¶ 12–13.) As one court to consider the system noted, "[a]lthough LiveVox HCI's level of human intervention may seem minimal, every court to examine this issue has held that the clicker agent's role prevents the system from qualifying as an ATDS under the statute." *Collins v. Nat'l Student Loan Program*, 360 F. Supp. 3d 268, 273 (D.N.J. 2018) (collecting cases); *see also Marshall v. CBE Grp.*, No. 2:16-CV-02406-GMN (NJK), 2018 WL 1567852, at *7 (D. Nev. Mar. 30, 2018) ("the overwhelming weight of authority applying this element hold that 'point-and-click' dialing systems, paired

with a cloud-based pass-through services [sic], do not constitute an ATDS as a matter of law in light of the clicker agent's human intervention.") (collecting cases).

True, the Ninth Circuit in *Marks* envisioned that some level of human interaction with a system may still qualify as an ATDS. 904 F.3d at 1053 (holding that an ATDS must have the capacity "to dial such numbers automatically (even if the system must be turned on or triggered by a person)"). However, LiveVox HCI goes far beyond merely triggering a system to run automatically. It requires human interaction to initiate each call. The Court agrees with other courts to consider the LiveVox HCI system and, applying *Marks*, finds that the clicker agent's role precludes LiveVox HCI from qualifying as an ATDS. Accordingly, Ammons's TCPA claim fails as a matter of law.

## C. FDCPA & ROSENTHAL ACT

DAS also moves for summary judgment on Ammons's FDCPA and Rosenthal Act claims, asserting that no evidence exists of DAS's intent to harass or annoy. (Mot. 17–24.)

### 1. FDCPA, 15 U.S.C. §§ 1692d and 1692d(5)

Section 1692d of the FDCPA prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d(5) specifically prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* § 1692d(5). Claims under these sections should be viewed from the perspective of the "least sophisticated debtor." *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1226 (E.D. Cal. 2010). Ammons contends that the volume and pattern of DAS's calls demonstrates an intent to harass. (Opp'n 11–15.)

Although a plaintiff may ordinarily pursue claims under both § 1692d and § 1692d(5), "[c]oncurrent claims for violations of § 1692d and § 1692d(5) must be

treated as a single claim under § 1692d(5) where, as here, the underlying conduct fits 'squarely within § 1692d(5).'" *Hollis v. LVNV Funding*, No. EDCV 18-1866-JGB (KKx), 2019 WL 1091336, at *3 (C.D. Cal. Jan. 2, 2019) (quoting *Stirling v. Genpact Servs., LLC*, No. 2:11-CV-06369-JHN-MANx, 2012 WL 952310, at *2 (C.D. Cal. Mar. 19, 2012)).[4] Thus, the Court considers Ammons's claims under § 1692d(5).

"Congress did not intend the FDCPA to completely bar any debt collection calls." *Hami v. Portfolio Recovery Assocs.*, No. 2:14-CV-06580-JFW-RZx, 2015 WL 897571, at *2 (C.D. Cal. Feb. 23, 2015) (citation omitted). Thus, to prevail, a plaintiff must show the defendant's intent to annoy, abuse, or harass. 15 U.S.C. § 1692d(5). Such intent may be inferred from the volume, pattern, and frequency of the calls. *See e.g.*, *Joseph v. J.J. Mac Intyre Cos.*, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002). Intent may also be found with a pattern of calling where a collector calls back immediately, continues to call after being asked to stop, or calls numerous times in the same day. *Stirling*, 2012 WL 952310, at *4.

However, courts differ widely "as to the amount or pattern of calls sufficient to raise a triable issue of fact regarding the intent to annoy, harass, or oppress." *Arteaga*, 733 F. Supp. 2d at 1227 (granting summary judgment where calls were made daily but there was no evidence of defendant calling back immediately, calling multiple times in a day, or calling after requests to cease); *see also Fields v. Credit Mgmt. Sys.*, No. EDCV 14-1853 JGB (SPx), 2015 WL 11367930, at *7 (C.D. Cal. Nov. 23, 2015) (denying summary judgment where defendant called two to four times per day, including calling back immediately and calling after plaintiff requested that calls cease); *Jones v. Rash Curtis & Assocs.*, No. C 10-00225 JSW, 2011 WL 2050195, at *3 (N.D. Cal. Jan. 3 2011) (granting summary judgment where nothing indicated an

---

[4] Allowing a plaintiff to pursue a § 1692d claim and a § 1692d(5) claim on the same facts would "effectively eviscerate the requisite intent contemplated in situations governed by § 1692d(5) . . . [and] would also render that entire subsection superfluous." *Neu v. Genpact Servs., LLC*, No. 11-CV-2246 W (KSC), 2013 WL 1773822, at *3 (S.D. Cal. Apr. 25, 2013) (alterations in original) (quoting *Stirling*, 2012 WL 952310, at *3).

intent to harass beyond the calls themselves, 179 calls in one year); *Krapf v. Nationwide Credit Inc.*, No. SACV 09-00711 JVS (MLGx), 2010 WL 2025323, at *3–4 (C.D. Cal. May 21, 2010) (collecting cases and denying summary judgment based on four to eight calls per day for two months, often within minutes).

The undisputed facts show that DAS called Ammons's 3436 Cell Phone seventy-seven times in seventy-three days, sometimes up to five times per day, including calling after she asked DAS to stop. This alone could indicate DAS's intent to harass. However, DAS never threatened Ammons or used abusive language, and on the days that DAS reached her, no further calls were placed on the same day. Also, out of seventy-seven attempts, DAS reached Ammons only five times. These facts could evidence DAS's intent to reach Ammons rather than an intent to harass or annoy. *See Probasco v. IQ Data Int'l*, No. CIV S-10-2716 KJM GGH, 2011 WL 1807429, at *3 (E.D. Cal. May 10, 2011); *see also Jiminez v. Accounts Receivable Mgmt.*, No. CV 09-9070-GW (AJWx), 2010 WL 5829206, at *4 (C.D. Cal. Nov. 15, 2010) (granting summary judgment where a reasonable juror could find only that, based on the absence of an "unacceptable pattern of calls," the calls were placed with intent to reach debtor rather than intent to harass). Taking all inferences in the light most favorable to Ammons, a reasonable juror could find that the volume and pattern of calls here indicate an intent to harass, abuse, or annoy. Accordingly, the Court **DENIES** summary judgment on Ammons's § 1692d(5) claim.

2.  FDCPA, 15 U.S.C. § 1692f

DAS also argues it is entitled to summary judgment on Ammons's § 1692f claim because it is based on the same facts as her § 1692d(5) claim. (Mot. 23.) Section 1692f "prohibits a debt collector from using 'unfair or unconscionable means to collect or attempt to collect any debt.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting 15 U.S.C. § 1692f). The statute lists non-exclusive examples of unfair or unconscionable conduct. However, the same alleged volume and pattern of calls Ammons alleges violates § 1692d(5) may not also form

the sole basis for her separate claim under § 1692f.[5] *See Fields*, 2015 WL 11367930, at *8–9 (C.D. Cal. Nov. 23, 2015). Further, "there is no evidence of any conduct by [DAS] that is remotely similar to the examples provided in § 1692f." *Id.* at *9 (quoting *Johnson v. Portfolio Recovery Assocs.*, No. CV 12-4261-PSG, 2013 WL 1015641, at *11 (C.D. Cal. June 24, 2013)). As such, Ammons's § 1692f claim fails as a matter of law and the Court **GRANTS** DAS summary judgment as to that claim.

### 3. Rosenthal Act, Cal. Civ. Code §§ 1788.11(d), 1788.17[6]

DAS moves for summary judgment as to Ammons's Rosenthal Act claim on the same bases as above, specifically a lack of wrongful intent. (Mot. 24.) The Rosenthal Act "mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012). Accordingly, whether conduct violates the Rosenthal Act turns on whether it violates the FDCPA and the above analysis of Ammons's § 1692d(5) claim also applies to her Rosenthal Act claim. For the reasons discussed above, the Court finds a genuine issue of material fact exists as to whether the volume and pattern of calls to Ammons's 3436 Cell Phone indicate an intent to annoy. Thus, the Court **DENIES** summary judgment on Ammons's Rosenthal Act claim.

### D. INTRUSION UPON SECLUSION

Under California common law, intrusion upon seclusion is actionable "if the intrusion would be highly offensive to a reasonable person." *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 465 (9th Cir. 1997). Courts have found that repeated debt collection calls can constitute invasion of privacy where the caller's conduct is highly offensive, conversations are upsetting, or calls are made with such persistence and

---

[5] Ammons seeks to support her § 1692f claim with calls to her work number but, as discussed above, those calls are not before the Court. *See supra* section IV.A.

[6] California Civil Code section 1788.11(d) provides "[n]o debt collector shall collect or attempt to collect a consumer debt by means of . . . [c]ausing a telephone to ring repeatedly or continuously to annoy the person called." Section 1788.17 requires debt collectors to comply with the FDCPA.

frequency that they amount to hounding. *Kleiman v. Equable Ascent*, No. CV 12-9729 CAS (AJWx), 2013 WL 49754, at *3–4 (C.D. Cal. Jan. 3, 2013) (citing Restatement (Second) of Torts § 652B cmt. d).

The evidence presented by both parties confirms that DAS's conduct during the five answered calls was objectively professional. No DAS agent made threats or used abusive language. They identified themselves and informed Ammons that they were calling about her debt. Each of the five conversations lasted one minute or less before Ammons ended the call, and she presents no evidence that the conversations were upsetting beyond the mere fact of being debt collection calls. Although DAS occasionally called three to five times per day, the calls were not so persistent or frequent that a reasonable juror could find they amount to hounding. *See Rector v. Wells Fargo Dealer Servs.*, No. CV 13-5288 DSF (MANx), 2014 WL 12603205, at *2 (C.D. Cal. May 12, 2014) (granting summary judgment where plaintiff presented no evidence of offensive conduct beyond the calls themselves); *c.f. Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (denying summary judgment where defendant was inappropriate on calls, did not identify itself as a debt collector, and would call back immediately after having spoken to the plaintiff).

As the evidence demonstrates no material dispute of fact regarding the content of the conversations, and the calls alone are insufficient to support Ammons's claim, DAS's Motion is **GRANTED** as to this claim.

E. **ACTUAL AND PUNITIVE DAMAGES**

DAS moves for summary judgment as to Ammons's requests for actual and punitive damages. (Mot. 23, 25; Compl. ¶¶ 57, 61, 63.)

Ammons seeks actual damages under the FDCPA and Rosenthal Act, but does not oppose DAS's Motion on the issue.[7] (*See generally* Opp'n.) The only actual

---

[7] The Court is not obligated to "scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996), and the parties bear the burden to lay out their support clearly, *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir.2001). Nevertheless, the Court reviewed the record for plausible support for Ammons's actual damages and finds only

harm raised in this case is the "exacerbat[ion]" of Ammons pre-existing stress. (*See* Compl. ¶ 27.) She does not dispute that her distress began before DAS began calling her and continued after the calls ceased. (DSUF 32; PSCF 32.) She does not dispute that she has not sought medical attention, received diagnosis, or been prescribed medication. (DSUF 32; PSCF 32.) As Ammons offers no opposition or evidence that would raise a triable issue, the Court **GRANTS** DAS's Motion as to actual damages.

Ammons seeks punitive damages under California Civil Code section 3294. A plaintiff may recover punitive damages where she proves by "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. Here, Ammons offers no evidence DAS acted "despicabl[y]" with "willful and conscious disregard of the rights or safety of others," *id.* § 3294(c)(1), subjected her or any person "to cruel and unjust hardship," *id.* § 3294(c)(2), or intentionally misrepresented or concealed any material facts with the intention of depriving anyone of property or causing injury, *id.* § 3294(c)(3). That punitive damages may be available where supported in other invasion of privacy cases does not make them available here, where Ammons has offered no evidence giving rise. The Court **GRANTS** DAS's Motion as to punitive damages.

---

Ammons's deposition testimony and declaration. (*See* Ammons Dep. 41–45; Decl. of Michelle Ammons ¶¶ 13–14, ECF No. 40-15.) However, such self-serving testimony does not create a genuine issue of material fact, especially where, as here, Ammons does not dispute that her distress began before and continued after DAS's calls, and offers no corroboration.

## V. CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** DAS's Motion for Summary Judgment. (ECF No. 38.) Specifically, the Court **GRANTS** DAS's Motion as to Ammons's claims under the TCPA, § 1692f of the FDCPA, and Intrusion upon Seclusion. The Court also **GRANTS** DAS's Motion as to Ammons's claims for actual and punitive damages. The Court **DENIES** DAS's Motion as to Ammons's FDCPA claim under § 1692d(5) and her Rosenthal Act claim.

**IT IS SO ORDERED.**

October 9, 2019

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE